# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **SHERMAN MORISSETTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. 08 C 2545 |
| | ) | |
| v. | ) | Judge Ronald A. Guzman |
| | ) | |
| **PARTHASARATHI GHOSH, M.D.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate at Stateville Correctional Center, has sued defendant pursuant to 42 U.S.C. § 1983 for his alleged violation of plaintiff's Eighth Amendment rights. The case is before the Court on defendant's motion to strike plaintiff's Local Rule ("LR") 56.1 statement and certain exhibits he submitted in support of it, defendant's motion to deem admitted the facts he asserts in his LR 56.1 statement, defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. For the reasons stated in this order, the Court grants in part defendant's motions to strike and deem facts admitted, grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

**Defendant's Motions to Strike & Deem Facts Admitted**

As explained in the "Notice to Pro Se Litigant Opposing Summary Judgment" that plaintiff received, motions for summary judgment and responses to them are governed by LR 56.1. (*See* Def.'s Mot. Leave File LR 56.1 Stmt., Ex. 3, Notice to Pro Se Litigant Opposing Summ. J.) That rule requires a party moving for summary judgment to file "a statement of material facts as to which [he] contends there is no genuine issue" that "consist[s] of short numbered paragraphs, including

. . . specific references to the affidavits, parts of the record, and other supporting materials . . . [that] support the facts set forth in [each] paragraph." LR 56.1(a)(3). It also requires a party opposing summary judgment to file a response to the movant's fact statement that contains "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3). Moreover, the rule says, "[a]ll material facts set forth" in the moving party's fact statement "will be deemed to be admitted unless controverted" by the opposing party's response. *Id.* The Court may enforce LR 56.1 strictly, even in cases involving pro se litigants. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[P]ro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines.")

Plaintiff's LR 56.1 fact statement, which is part of his cross-motion for summary judgment, and his response to defendant's LR 56.1 fact statement, which is styled as "Plaintiff's Affidavit in Response" to defendant's motion, contain only a few citations to supporting evidence, none of which is adequate. (*See* Pl.'s Aff. Resp. Def.'s Mot. Summ. J. ["Pl.'s Resp. Def.'s LR 56.1 Stmt."] ¶¶ 2, 14, 33, 67-68, 79, 104, 109, 120-21, 123-24, 148-50, 155-60, 162-64, 169, 174-75 (citing to documents that do not support the response or create a factual dispute or are irrelevant); *id.* ¶¶ 71, 128 (citing generally to medical records); Pl.'s Cross-Mot. Summ. J. ["Pl.'s LR 56.1 Stmt."] ¶ 16 (citing to a document not attached as an exhibit); *id.* ¶ 23 (citing to a document that does not support the facts asserted).) In his fact statement and response, however, plaintiff refers to his own actions

or experiences or those he observed. Because plaintiff could testify at trial about such matters, *see* Federal Rule of Evidence 602, and is proceeding pro se, the Court will consider the facts based on his personal knowledge that he asserts in his LR 56.1 statement and response to defendant's LR 56.1 statement.

Defendant asks the Court to strike exhibits A-J that plaintiff submitted in support of his fact statements. Exhibits A through G are affidavits from other inmates describing injuries or illnesses they suffered at Stateville and the treatment, or lack of it, they received. However, none of these witnesses has personal knowledge of plaintiff's medical condition or defendant's response to it. Because the testimony in these affidavits would not be admissible at trial, the Court grants defendant's motion to strike them from the record. *See* Fed. R. Civ. P. 56(e) (stating that summary judgment affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (stating that personal knowledge includes inferences "grounded in observation or other first-hand personal experience," not those based on "speculations, hunches [or] rumors" (quotation omitted)).

Exhibits H and I, respectively, are plaintiff's U.S. Army discharge papers and a notice of an April 2007 press conference about medical care provided by the Illinois Department of Corrections ("IDOC"). Because these documents have no relevance to this case, the Court strikes them.

Exhibit J is some of plaintiff's IDOC medical records. To the extent plaintiff cites these records for facts he asserts from his personal knowledge, they are relevant and will be considered by the Court.

**Motions for Summary Judgment**

**Facts**

Defendant was licensed to practice medicine in Illinois in 1978, has been board certified in internal medicine since 1984 and has worked at Stateville since June 2003. (Def.'s LR 56.1 Stmt. ¶¶ 4-6.) Prior to working at Stateville, defendant was a Clinical Assistant Professor of Medicine at Rush University and an attending physician at Cook County Hospital. (*Id.* ¶ 7.) In his work for Stateville, defendant has treated numerous inmates with glaucoma. (*Id.* ¶ 8.)

Plaintiff has been incarcerated by IDOC since 1983. (*Id.*, Ex. B, IDOC Internet Inmate Status.) In 2002, he was diagnosed with glaucoma, an eye disease characterized by increased intraocular pressure that can cause permanent vision loss, if left untreated. (*Id.* ¶¶ 11, 115.) Glaucoma is treated by reducing intraocular pressure either with prescription eye drops, which can be irritating to the eyes, or laser surgery, which plaintiff has refused. (*Id.* ¶¶ 112, 114.)

Plaintiff was transferred to Stateville on October 25, 2006. (*Id.* ¶ 9.)

On March 14, 2007, plaintiff saw a certified medical technician ("CMT") who referred him to Stateville ophthalmologist James Bizzel for treatment of a chalazion, or bump, on his right eyelid. (*Id.* ¶ 21.) On March 30, 2007, Dr. Bizzel recommended that plaintiff have the chalazion removed at the University of Illinois Ophthalmology Clinic ("U of I clinic"). (*Id.* ¶ 22.)

4

On May 22, 2007, plaintiff went to the U of I clinic and was diagnosed with advanced glaucoma. (*Id.* ¶ 24.) The doctor recommended that: (1) plaintiff use Travatan Z eye drops (the brand name for the prostaglandin analog Travoprost, which is used to increase drainage of intraocular fluid, http://www.glaucoma.org/treating/medication.php) and Trusopt eye drops (the brand name for the carbonic anhydrase inhibitor Dorzolamide HCI, which is used to decrease the production of ocular fluid, *id.*) to treat the glaucoma; (2) the chalazion not be removed until after the glaucoma was treated; and (3) plaintiff return to the clinic for a follow-up exam in six weeks. (Def.'s LR 56.1 Stmt. ¶ 24; *id.*, Ex. D, 5/22/07 Request for Consultation – Report of Consultation, Bates No.1774.)

On May 24, 2007, defendant ordered for plaintiff three-month supplies of Xalatan eye drops (the brand name for the prostaglandin analog Latanoprost, which is similar to, and has the same effect as, Travatan Z, http://www.glaucoma.org/treating/medication.php) and Cosopt eye drops (a combination of Dorzolamide HCI and the beta blocker Timolol Maleate, which has the same effect as Trusopt, *id.*). (Def.'s LR 56.1 Stmt. ¶¶ 27-29; *id.*, Def.'s Ex. D, 5/24/07 Offender Outpatient & Progress Notes, Bates No. 1726; *id.*, Medication Administration Record, Bates Nos. 1827, 1832; *id.*, 5/24/07 Prescription Order, Bates No. 1848.)

On June 12, 2007, defendant ordered a ten-week supply of Xalatan for plaintiff. (*Id.* ¶¶ 35, 37; *id.*, Ex. D, Medication Administration Record, Bates No. 1830.)

On July 10, 2007, defendant ordered a six-week supply of Xalatan for plaintiff. (*Id.*, Medication Administration Record, Bates No. 1833.)

On August 1, 2007, defendant signed a referral form for plaintiff to return to the U of I clinic. (*Id.*, 8/1/07 Medical Special Services Referral & Report, Bates No. 1776.)

5

On August 23, 2007, plaintiff was examined by Dr. Saija at the U of I clinic, who recommended that he continue using the Xalatan and Cosopt drops and return to the clinic in two to three months to have the chalazion removed. (*Id.*, 8/23/07 Report of Referral, Bates No. 1776.)

On August 25, 2007, defendant ordered three-month supplies of Xalatan and Cosopt for plaintiff. (*Id.*, 8/25/07 Offender Outpatient Progress Notes, Bates No. 1726.)

On September 24, 2007, defendant signed a referral form for plaintiff to return to the U of I clinic. (*Id.*, 9/24/07 Medical Special Services Referral & Report, Bates No. 1777.)

On October 2, 2007, Dr. Truax of the U of I clinic removed the chalazion from plaintiff's eye, authorized him to use artificial tears and recommended that he return to the clinic in two weeks. (*Id.* ¶¶ 48-51, 57; *id.*, Ex. D, 10/2/07 Report of Referral, Bates No. 1777.)

On October 3, 2007, defendant ordered artificial tears for plaintiff and signed a referral form fo him to return to the U of I clinic. (*Id.*, Ex. D, 10/3/07 Prescription Order, Bates No. 1849; *id.*, 10/2/07 Medical Special Services Referral & Report, Bates No. 1778.)

On October 27, 2007, defendant again ordered artificial tears for plaintiff. (*Id.*, Ex. D, 10/27/07 Prescription Order, Bates No. 1849.)

On November 15, 2007, plaintiff returned to the U of I clinic and told Dr. Truax that he had not been using Xalatan regularly because of "irritation." (*Id.* ¶ 58.) Dr. Truax recommended that plaintiff receive Lumigan eye drops (another prostaglandin analog that is used to treat glaucoma by draining intraocular fluid, http://www.glaucoma.org/treating/medication.php) instead of Xalatan eye drops and return to the clinic in three months. (*Id.*, Ex. D, 11/15/07 Report of Referral, Bates No. 1778.)

On November 16, 2007, defendant ordered Lumigan eye drops and artificial tears for plaintiff. (*Id.*, Prescription Order, Bates No. 1850.)

On December 5, 2007, plaintiff saw defendant for foot pain and said nothing about his glaucoma or glaucoma medications. (*Id.* ¶¶ 65-66.)

On December 12, 2007, plaintiff told a physician's assistant ("PA") that he had not yet received the eye drops that were prescribed for him in November. (*Id.* ¶ 67; *id.*, Ex. D, 12/12/07 Offender Outpatient Progress Notes, Bates No. 1733.) In response, the PA recommended that a three-month supply of artificial tears be ordered for plaintiff. (*Id.*) On December 13, 2007, defendant placed that order. (*Id.*, Ex. D, Medication Administration Record, Bates No. 1835; *id.*, 12/12/07 Prescription Order, Bates No. 1851.)

On December 15, 2007, plaintiff submitted a grievance to his correctional counselor, complaining that he had not received the Lumigan eye drops that had been prescribed for him in November. (*Id.*, Ex. F, 12/15/07 Grievance.) On December 26, 2007, the grievance was referred to Nurse Vance of the Health Care Unit, who said the medications had been ordered on November 6, and December 12, 2007, and, "[b]y now [plaintiff] should have them." (*Id.*) On January 8, 2008, a grievance officer found that plaintiff's complaint had been resolved and recommended that no further action be taken. (*Id.*) On January 9, 2008, Warden McCann concurred. (*Id.*) Plaintiff appealed the grievance to the Administrative Review Board ("ARB"), which denied the appeal because "the issue was appropriately addressed" by the prison. (*Id.*) Defendant was not aware of this grievance. (Def.'s Add'l Facts ¶ 161.)

On March 25, 2008, defendant signed a referral for plaintiff to return to the U of I clinic in May. (Def.'s LR 56.1 Stmt., Ex. D, Medical Special Services Referral & Report, Bates No. 1779.)

On May 5, 2008, plaintiff filed this suit, claiming that defendant violated his Eighth Amendment rights by failing to give plaintiff the Lumigan eye drops that were prescribed for him in November 2007.

**Discussion**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.* However, a party cannot defeat summary judgment simply by resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Instead, the party who bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that there is a genuine issue of material fact that requires a trial. *Id*.

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *see Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999) ("[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim."). The exhaustion requirement is a prerequisite to filing suit, not entering judgment. *Ford*

*v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Thus, the requirement is not satisfied if an inmate starts but does not finish the administrative process before filing suit. *Id.*

There is no dispute that plaintiff filed grievances about his glaucoma care in July and December 2007, July 2008 and July 2009. (*See* Pl.'s Resp. Def.'s LR 56.1 ¶¶ 165-74; *id.*, Ex. P, 12/15/07 Grievance; *id.*, Ex. O, 7/13/07 Grievance.) Plaintiff says this suit is based on his December 2007 grievance, not the one he filed in July 2007. (*See* Compl. ¶¶ 9-27; Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶ 148 ("[The] issue the plaintiff based this civil complaint on, beginning 11/16/07, and not on 7/13/07.").) Thus, the Court need not determine whether plaintiff exhausted administrative remedies with respect to the July 2007 grievance.

The same is true for plaintiff's July 2008 and July 2009 grievances. As plaintiff admits, he did not start, let alone finish, the administrative process for these grievances until after he filed this suit. (*See* Compl.; Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶¶ 165-74.) Because he has not exhausted administrative remedies with respect to the claims addressed in those grievances, the Court will not address them. *Ford*, 362 F.3d at 398.

Plaintiff exhausted administrative remedies for his December 2007 grievance, which alleges that he had not received the Lumigan eye drops recommended by the U of I clinic the previous month. *See* 20 Ill. Admin. Code 504.810-50 (setting forth the IDOC grievance process); (Def.'s LR 56.1 Stmt., Ex. F (showing that plaintiff followed the required steps)). Defendant's alleged failure to give plaintiff that medication violated the Eighth Amendment only if it amounted to deliberate indifference to a serious medical need.[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A 'serious'

---

[1] Defendant argues both that he has qualified immunity from, and should prevail on the merits of, plaintiff's claim. Normally, qualified immunity is addressed first. *Walker*, 293 F.3d at 1037. In this case, however, the immunity and merits inquiries, *i.e.*, whether defendant's actions could reasonably have been constitutional and whether they, in fact, were, "collapse into one." *Id.* Thus, the Court addresses them as one. *Id.*

medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (quotation omitted). Defendant acted with deliberate indifference if he "knew of a substantial risk of harm to [plaintiff] and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). "A negligent or inadvertent failure to provide adequate medical care" does not constitute deliberate indifference. *Id.*

The record shows that defendant knew in November 2007 that plaintiff had glaucoma, which is a serious medical need. (Def.'s LR 56.1 Stmt. ¶¶ 24-29); *see Padichit v. Unknown Cook County Officials*, No. 04-388-MJR, 2006 WL 1897518, at *2 (S.D. Ill. July 11, 2006). It also shows that there was a six-month lapse between the U of I clinic's recommendation that plaintiff receive Lumigan and his actual receipt of it from the prison. However, the record does not suggest that defendant knew about that lapse. Rather, it shows that defendant ordered Lumigan for plaintiff on November 16, 2007, and heard nothing about it from plaintiff when defendant saw him for an unrelated condition on December 5, 2007. (Def.'s LR 56.1, Ex. D, 11/15/07 Medical Special Services Report of Referral, Bates No. 1778; *id.*, Prescription Order Form, Bates No. 1850.) On December 12, 2007, plaintiff told a physician's assistant ("PA") that he had not received the "[eye] drops" that had been prescribed for him. (*Id.*, 12/12/07 Offender Outpatient Progress Notes, Bates No. 1733.) But the PA's notes do not identify the "drops" by name and recommend only that plaintiff receive artificial tears, which defendant promptly ordered. (*Id.*; *id.*, Prescription Order at 1851.) Moreover, though plaintiff filed a grievance about the missing medication on December 15,

10

2007, defendant says, without contradiction, that he was not aware of it. (*Id.*, Ex. F, 12/15/07; Pl.'s Add'l Facts ¶ 161.)

Nonetheless, plaintiff argues that defendant's knowledge of the situation can be inferred from his receipt of reports from U of I doctors that plaintiff was not receiving his medication. (*See* Pl.'s LR 56.1 Stmt., Ex. J, 5/9/08 U of I Report; Pl.'s Reply Cross-Mot. Summ. J, Letter to Ghosh from Schultz of 2/11/09.) There are two such reports in the record but both were made *after* plaintiff filed this suit. (*Id.*) As a result, they do not support the inference that defendant knew at any time between November 16, 2007, when defendant ordered it, and May 5, 2008, when this suit was filed, that plaintiff was not receiving Lumigan.

Further, as a whole, defendant's treatment of plaintiff's glaucoma in the one-year period between his diagnosis and filing of this suit suggests that he acted with diligence, not indifference, to plaintiff's medical condition. In that period, the record shows, defendant placed eight different orders for one or more of four different eye drops the U of I clinic prescribed for plaintiff and made four referrals for him to receive follow-up treatment there. (Def.'s LR 56.1 Stmt. ¶¶ 24-56.) This record of continuous, appropriate care negates any inference that defendant was deliberately indifferent to plaintiff's medical need. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (stating that "the totality of an inmate's medical care" must be examined to make a determination about deliberate indifference and "isolated incidents of delay or even refusals to administer [medication] . . . cannot be construed to be deliberate indifference"); *Gutierrez*, 111 F.3d at 1374-75 (affirming dismissal of Eighth Amendment claim because plaintiff's allegations that "he repeatedly received treatment over [a] ten-month period" and experienced only a few isolated delays did not support an inference of deliberate indifference).

11

## **Conclusion**

For the foregoing reasons, the Court grants in part and denies in part defendant's motions to strike and deem facts admitted [doc. nos. 97 & 99], grants defendant's motion for summary judgment [doc. no. 71] and denies plaintiff's cross-motion for summary judgment [doc. no. 89]. This case is terminated.

**SO ORDERED.**   **ENTERED:**

**March 23, 2010**

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**